## MT. MANSFIELD TELEVISION, INC.

v.

## UNITED STATES of America.

### Civ. A. No. 3768.

United States District Court
D. Vermont.

Aug. 6, 1964.

A. Pearley Feen, Burlington, Vt., for plaintiff.

Joseph F. Radigan, U. S. Atty., Rutland, Vt., and Moshe Schuldinger, Tax Div., Dept. of Justice, Washington, D. C., for the Government.

GIBSON, District Judge.

## STATEMENT OF THE CASE

This action was filed on July 10, 1963 by Mt. Mansfield Television, Inc. against the United States of America whereby the plaintiff-taxpayer seeks to recover a sum amounting to $4,538.43 paid to the Internal Revenue Service as a deficiency income tax with interest for the calendar years 1957 and 1958. On its returns for these years the plaintiff-taxpayer deducted certain amounts which it claims were rentals for micro-wave equipment it required in the operation of its business. It claims the right to this deduction by virtue of § 162(a)(3) of the 1954 Internal Revenue Code.

These deductions were disallowed by the District Director of Internal Revenue who allowed only the interest element in the rentals to be deducted and capitalized the principal sum to be paid under the contract and allowed depreciation based upon an estimated useful life of the micro-wave equipment of fifteen years. The additional taxes assessed against the plaintiff-taxpayer were paid on July 10, 1962. The plaintiff-taxpayer then filed timely claims for refund on November 26, 1962 which were disallowed and as a result the instant suit was timely commenced on July 10, 1963.

A trial by Court was heard on May 13, 1964 at which time all parties were requested and did submit memorandums of law and requests for findings of fact.

## FINDINGS OF FACT

I find the following facts:

1. The plaintiff-taxpayer operates a television station in South Burlington, Vermont. In the operation of its television station the plaintiff-taxpayer uses certain "micro-wave" equipment, the function of which is to transmit television signals from the plaintiff's studios in South Burlington to its transmitter at the top of Mt. Mansfield (a distance of twenty miles) where these television signals are rebroadcast to the public. The micro-wave equipment provides the communication link between the studios in South Burlington and the transmitter on Mt. Mansfield.

2. The taxpayer initially leased micro-wave equipment from the New England Telephone & Telegraph Company for the period 1954 to 1956. In 1956 plaintiff commenced negotiations with Philco Corporation to acquire micro-wave equipment for itself as a replacement for this leased service. Stuart Martin, general manager of the plaintiff, was determined that, if possible, any acquisition of equipment to replace that formerly leased from New England Telephone & Telegraph Company would be treated as a lease for federal income tax purposes. Accordingly, in an "order for lease" dated August 27, 1956 sent by telegram to Philco, Martin specified that a Treasury Department ruling approving the proposed transaction as an expense deductible by the lessee would be provided to the plaintiff. [Here and elsewhere in this opinion, the terms "lessor", "lessee", and "lease" are used for convenience without intending to suggest the proper characterization of any agreement.] By a letter dated October 2, 1956 Philco assured Martin that the transaction would be treated as a lease by the Treasury Department and referred him to its leasing broker, Ternan Clauson & Company. By telegram dated October 3, 1956 Ternan Clauson advised Martin that it was forwarding by special delivery the legal opinion of their counsel that rentals under their lease are deductible as trade or business expenses for tax purposes. Additional reassurance was obtained from Philco by telegram dated October 4, 1956 which referred to "Revenue Ruling 55-540, I.R.S.1955-35, Page 9". It is thus clear that plaintiff was at least aware of the applicable Revenue Ruling if not of its exact terms. Further, the plaintiff had the opinion of its very able attorney Mr. Feen on this particular matter. In a letter dated Octo-

ber 16, 1956 reviewing the legal opinion it is stated:

"In summary, the form of the lease does not in any way resemble a sale, and the transactions in which the form is used, as described in the opinion of Combs and Hoose are bona fide leases, and run no danger of being held to be sales.

"However, if the facts are otherwise, and if they do resemble the situation described in the ruling [55–540], then the 'Lessee', WMVT, should expect the internal revenue to apply its ruling and recognize that relief from the ruling can be obtained only in the courts.

"To sum up, if the lease cannot be claimed to achieve a return of the value of the leased property during the term of the lease, then you have a good case for deducting the rentals."

3. On December 17, 1956 the plaintiff submitted to Philco an "order for lease", which provided for the leasing by the plaintiff of certain micro-wave equipment for a period of five years with an option to renew the lease for ten annual renewal periods. On December 19, 1956 the plaintiff entered into a lease agreement with the United States Leasing Corporation, Philco's leasing brokers. The lease provided that the equipment would at all times be and remain the sole and exclusive property of the lessor, and the lessee would have no right, title or interest therein or thereto except as expressly set forth in the lease. The lease provided that upon the expiration or earlier termination of the lease the plaintiff would return the equipment to the lessor in good repair, condition and working order, ordinary wear and tear excepted, by delivering the equipment to the lessor at a place specified by the lessor within the city in which the equipment was delivered to the lessee, or by loading the equipment on such carrier as specified by the leasor and shipping the same, freight collect, to the lessor. The lease further provided that the lessee would not make any alterations, additions or improvements to the equipment without the prior written consent of the lessor, and all additions and improvements made to the equipment would become the property of the lessor upon the termination of the lease. Under the lease provisions the lessor reserved the right to enter the lessee's premises for the purpose of inspecting the equipment and observing its use. Further provisions of the lease provided that the lease could be terminated by the lessor for a default of ten days in the making of any rental payment by the lessee and that the lease was not assignable by the lessee without the written consent of the lessor. Other pertinent provisions of the lease provided that the lessee would make all repairs at its own cost; that the lessee assumed the entire risk of loss and damage from whatever cause without impairing its obligation under the lease; and, that the lessee would pay insurance costs and taxes. In addition, the lease also provided that the equipment would at all times be and remain the sole and exclusive property of the lessor and that the lessee would have no right, title or interest therein. There was no privision in the lease which gave the option to the plaintiff of acquiring any proprietary interest.

4. The Philco Corporation advised the plaintiff prior to the execution of the lease that the rentals charged depended upon numerous factors, including competitive leasing rentals, a reasonable profit for the lessor and the probable rental value of the equipment at the termination of the lease. It further advised the plaintiff that the period of the lease was not co-extensive with the life of the equipment, but that there would remain a period of useful life after the termination of the lease.

Under the terms of the lease agreement plaintiff was required to make sixty (60) *monthly* payments in the amount of $748.41 per month from December 19, 1957 to December 19, 1962, totaling $44,904.60 including interest. The plaintiff thereafter had an option to renew the lease at an *annual* rate of

$747.29. There was no limitation placed on the amounts of renewals allowed in the final lease as it was drawn up although in the "order for lease" dated December 17, 1956, plaintiff was to have the option of ten successive new leases of one year each. The plaintiff has exercised the renewal option contained in the lease following its termination in 1962.

On December 21, 1956 the plaintiff forwarded to Philco a "purchase order" for a micro-wave system for the total price of $37,748.28. It was stated in this document that "this order amends and corrects our purchase order #1202" which was the original order placed with Philco on October 4, 1956. On June 5, 1957, the plaintiff filed an "Application for Financing" with Philco in the amount of $38,-240, which was the final price of the micro-wave system agreed upon by the parties. The application was processed through Philco's Credit Department and was ultimately accepted.

Following the execution of the lease it was assigned by the lessor, United States Leasing Corporation, to the Irving Trust Company. Subsequent to the execution of the lease, the lessor mortgaged the leased property to the Irving Trust Company.

5. The plaintiff deducted the "rental payments" paid to United States Leasing under the agreement on its income tax returns for the years 1957 and 1958. These rentals totaled $6486.22. The deductions for these payments were disallowed by the District Director who allowed the interest element in the rentals to be deducted and capitalized the principal sum to be paid under the contract and allowed depreciation based upon an estimated useful life for the equipment of fifteen years. Additional taxes were assessed and paid on July 10, 1962. The taxpayer filed timely claims for refund on November 26, 1962 and the instant suit was timely-commenced on July 10, 1962.

## CONCLUSIONS OF LAW

Plaintiff contends that Section 162(a)(3) of the Internal Revenue Code which provides for the deduction of rentals of property "to which the taxpayer has not taken or is not taking title or in which he has no equity" and under which the plaintiff claimed the deduction on his income tax returns is determinative of this case. It argues that on the basis of all the terms and conditions contained in the agreement between the United States Leasing Corporation and the plaintiff, the circumstances in which the said agreement was entered into and the nature of the equipment involved, the agreement dated December 19, 1956 provided for a true lease of the micro-wave equipment and the payments made thereunder by the plaintiff were made for the rental of said equipment and not for the purchase thereof. It therefore concludes that the Director of Internal Revenue was in error in not allowing the deductions to plaintiff.

The defendant contends that the plaintiff and United States Leasing Corporation when entering into the transaction in issue intended that the transaction should constitute a conditional sale even though the transaction was termed a lease by the parties. It argues that payments by the plaintiff under the agreement were payments on the purchase price of the system rather than deductible rental payments. In support of its position, it cites Revenue Ruling 55–540.

Section 162 of the Internal Revenue Code of 1954 states:

"(a) *In general.* There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

"(1) * * *

"(2) * * *

"(3) rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity."

Revenue Ruling 55–540 states that its purpose is "to state the position of the Internal Revenue Service regarding the income tax aspects of the purported leasing of equipment for use in trade or business of the lessee." Describing the type of purported leasings to which the Ruling applies, this Ruling continues:

"[2.02] The agreements are generally cast in the form of chattel leases and are as varied as the reasons for entering into such arrangements. An approximate pattern is discernible, however, and many of the agreements may be loosely defined and grouped as follows:

"(a) * * *

"(b) * * *

"(c) * * *

"(d) Agreements which provide for the payment of 'rental' for a short original term in relation to the expected life of the equipment, with provision for continued use over substantially all of the remaining useful life of the equipment. During the initial term of the agreement, the 'rental' approximates the normal purchase price of the equipment, plus interest, while the 'rentals' during the remaining term or renewal period or periods are insignificant when compared to the initial rental. These agreements may or may not provide for an option to acquire legal title to the equipment upon the termination of the initial period or at any stated time thereafter.

"(e) Agreements similar to the arrangement in (d) above, but with the added factor that the manufacturer of the equipment purports to sell it to a credit or finance company, which either takes an assignment of such existing agreement with the user or itself later enters into such an agreement with

the user. In some instances, the lessor may be a trustee acting for or on behalf of the original vendor.

\* \* \* \* \* \*

"[4.02] The fact that the agreement makes no provision for the transfer of title or specifically precludes the transfer of title does not, of itself, prevent the contract from being held to be a sale of an equitable interest in the property.

\* \* \* \* \*

"[4.06] If the sum of the specified 'rentals' over a relatively short part of the expected useful life of the equipment approximates the price at which the equipment could have been acquired by purchase at the time of entering into the agreement, plus interest or carrying charges on such amount, and the lessee may continue to use the equipment for an additional period or periods approximating its remaining useful life for relatively nominal or token payments, it may be assumed that the parties have entered into a sale contract, even though a passage of title is not expressly provided in the agreement. Agreements of the type described in 2.02(d), and (e) above, in general, will be held to be sales contracts."

▆▆ The incidence of taxation depends upon the substance, not the form of the transaction. Commissioner of Internal Revenue v. Hansen, 360 U.S. 446 at 461, 79 S.Ct. 1270, 3 L.Ed.2d 1360 (1959). When it is necessary to protect the revenue obtained through the payment of income taxes and proper deductions, the Commissioner of Internal Revenue may look through the form in order to perceive the substance of the transaction. Brown, Inc. v. Commissioner of Internal Revenue, 258 F.2d 829 (2d Cir. 1958). In the instant action, this Court will not be bound by what the parties termed their transaction but what such transaction was in fact. "If the parties enter into a transaction which they honestly believe to be a lease but which in

actuality has all the elements of a contract of sale, it is a contract of sale and not a lease no matter what they call it nor how they treat it on their books. We must look, therefore, to the intent of the parties in terms of what they intended to happen." Oesterreich v. Commissioner of Internal Revenue, 226 F.2d 798, 801–802 (9th Cir. 1955).

Here it is clear that the parties intended that the transaction should constitute a conditional sale even though they termed it a lease. Under the so-called lease the plaintiff agreed to assume the entire risk of loss and damage to the equipment without impairing its obligation under the lease. It agreed to pay all insurance costs and taxes. The lease provided that the total rental would equal the price of the equipment plus approximately interest of four percent. After the termination of the lease taxpayer could exercise an option to renew the lease at an annual rental of only $747.29 or approximately one-twelfth of the rental per annum for the previous period. The manner in which the so-called lessor treated the transaction also indicates that the parties intended that it be a conditional sale. The plaintiff was required to submit a financial statement and to apply for financing.

Further evidence that the plaintiff actually considered the transaction as a sale is the lease provision that the plaintiff would pay the costs of removal if the option remained unexercised. It is difficult for this Court to believe that an astute businessman would incur such a large expense in the initial five years of acquisition, only to have the equipment removed (and at plaintiff's expense) upon the failure to pay the nominal annual rental of $747.29.

Further, the lease itself states that the stipulated loss value which shall be paid by the plaintiff to United States Leasing Corporation for loss or damage of the equipment from any cause whatsoever is as follows:

| | |
|---|---|
| 1st year: | $37,364.40 |
| 2nd year: | $35,496.18 |
| 3rd year: | $28,210.12 |
| 4th year: | $20,737.24 |
| 5th year: | $13,264.36 |
| 6th year: | $.4,670.55 |
| 7th year: | $ 3,736.44 |
| Thereafter | $ 3,736.44 |

The only possible conclusions which can be drawn from this schedule is that the useful life of the equipment was approximately five years, or, that the "lessor" had obtained its purchase price or a sum reasonably close to that figure.

Finally, there is a portion of the periodic payments which is designated as interest. It appears odd indeed that a lessee under a true lease must pay a certain part of the rental sum as interest on those rental payments. The letter from the comptroller of the plaintiff to the Irving Trust Company states that "The original amount of the lease was $44,904.60 (this included interest) * * *." Interest is one of the incidents of a conditional sale rather than a lease.

The plaintiff cannot complain that he was unaware that the form of the transaction he chose would be considered by the Internal Revenue Service to be a conditional sale and not a lease. He was aware of Revenue Ruling 55–540 and his own counsel acquainted him with the near certainty that the transaction would be considered a purchase and sale rather than a lease.

## JUDGMENT ORDER

Wherefore the defendant having conceded plaintiff's claim in paragraph G(a) of the complaint at the time of trial and upon consideration of the merits, it is hereby ordered: that the disallowance of the deduction of expenses incurred by the officers of the plaintiff corporation paid by it was improper and that they were properly deducted; that all other claims of the plaintiff are without merit and the complaint of the plaintiff, with the above-noted exception be and hereby is dismissed.

Judgment in favor of the defendant, except as noted, is hereby granted. No costs to be assessed.